THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE RAVEN-ELL, Appellant. — Appeals by defendant (1) from a judgment of the Supreme Court, Kings County (Pincus, J.), rendered January 4, 1980, convicting him of robbery in the first degree, upon a jury verdict, and imposing sentence and, (2) upon permission, from an order of the same court, dated April 28, 1980, which denied his motion to set aside the judgment. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered. Appeal from the order dated April 28, 1980 dismissed as academic in light of the determination on the appeal from the judgment. The People's proof was based upon the testimony of one witness, the complainant, who identified defendant as the man who robbed him in the Wilson Avenue subway station in the early morning of August 13, 1978. At trial, defendant, testifying in his own behalf, claimed that he was at home with his girlfriend at the time of the crime. His testimony was corroborated by his girlfriend. While cross-examining defendant, the prosecutor repeatedly delved into the fact that defendant had not gone to prison for prior convictions, ignoring rulings by the Trial Court that such inquiry was improper (see *People v Garcia,* 72 AD2d 356, 360; *People v Buffalino,* 49 AD2d 950). The prosecutor also stressed the fact that defendant's girlfriend and child lived on welfare, asking such pointed questions as "Isn't it a fact, though, that you could not hold a job down?" and "So you * * * sometimes had to scrape together on what you got from her welfare check?" (see *People v Moore,* 26 AD2d 902). Further, when the prosecutor inquired as to how defendant met his girlfriend, she asked him "You picked her up, you mean?", and, in her summation, she characterized his girlfriend as a "live-in mistress". Such characterizations were inflammatory and irrelevant to the issues in the case. In addition, the prosecutor in summation accused defendant's girlfriend of "manipulating you" (the jury) (see *People v Schaaff,* 71 AD2d 630), and implied that defendant had a propensity to steal, when she referred to his prior convictions and described him as "a victim of his own greed". Moreover, during deliberations, the jury asked to hear complainant's entire testimony, as well as the testimony of the alibi witnesses with respect to "Saturday night and Sunday morning". The Trial Court read the jury's note aloud in open court, and asked "Is that what the jury wants?" After the forelady responded affirmatively, the stenographer started to read back the complainant's testimony. But, before the stenographer could finish reading back the cross-examination of the complainant, or start to read any of the testimony of the alibi witnesses, the Trial Court called a recess, and insisted that the jury submit another written request, if they wanted to hear anything further. About half an hour later the jury "nullif[ied]" its request to hear

additional testimony, and rendered its verdict. In our view, the Trial Court improperly influenced the jury to rescind its request to hear certain testimony again (see CPL 310.30; *People v Lorenz,* 16 AD2d 135). The cumulative effect of these errors was to deprive defendant of a fair trial. Titone, J.P., Gibbons, Gulotta and Margett, JJ., concur.